MILLER and wife, Appellants, vs. GREEN and others, Respondents.

*May 4—June 2, 1953.*

160

For the appellants there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

For the respondents there was a brief and oral argument by *Willis E. Donley* of Menomonie.

CURRIE, J. Defendants Hines claim that their title under their deed is superior to the land-contract interest of the plaintiffs inasmuch as their deed was recorded first. Sec. 235.49, Stats., provides as follows:

"Every conveyance of real estate within this state hereafter made (except patents issued by the United States or this state, or by the proper officers of either) which shall not be recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded."

The question at issue on this appeal is whether the defendants Hines qualify under the foregoing statute as subsequent purchasers *"in good faith."* Plaintiffs contend that the defendants Hines do not so qualify because the plaintiffs were in possession of the premises on November 29, 1950, when the defendant W. E. Hines paid Mrs. Green $500 toward the purchase price of the farm, and that such possession constituted constructive notice of the plaintiffs' rights under their land contract. This makes it necessary to review the evidence bearing on such possession by the plaintiffs, or either of them.

Approximately 40 acres of the 63-acre tract was cultivated land and the remainder was pasture and woods. The buildings on the farm consisted of a small log house, a barn, and some sheds, which were in a dilapidated condition; the house was unlivable; and such buildings had not been used for many years. The plaintiff Eugene M. Miller had leased the entire 63-acre tract for the crop season of 1950 and had grown crops on the cultivated 40 acres and had grazed livestock on the remaining portion. The crop had been harvested prior to November, 1950, and the livestock had been removed when cold weather came about November 22, 1950. However, starting November 4, 1950 (the date that the Millers contracted to purchase this farm tract), Miller's father, in behalf

of the Millers, hauled between 50 and 60 loads of manure to the farm. First the manure was spread over the land, but then after a snowstorm came it was piled on a pile about 100 feet from the road, such pile being about 60 feet long and several feet high. Such hauling of manure was taking place on November 29, 1950 (the date that the defendants Hines made the $500 down payment on the purchase price), and continued until about December 8 or 9, 1950. Also in November, prior to the snowstorm, approximately two acres of land had been plowed by Miller, which plowed land was plainly visible from the abutting highway before the snowstorm.

The Hines farm was located about one-half mile from this 63-acre tract, although the distance by highway was about one and one-half miles. Part of the tract was visible from the Hines home. The defendant W. E. Hines testified that he knew that the plaintiff Eugene M. Miller had leased the tract for the crop season of 1950, but denied that he drove past the tract on the abutting highway during November, 1950, and denied having seen the plowing of the land, the hauling of the manure, or the manure pile on the land, although he admitted finding the manure pile there the following spring.

The general rule is that possession of land is notice to the world of whatever rights the possessor may have in the premises. The reason underlying this rule is well stated in *Pippin v. Richards* (1911), 146 Wis. 69, 74, 130 N. W. 872:

"The theory of the law is that the person in possession may be asked to disclose the right or title which he has in the premises, and the purchaser will be chargeable with the actual notice he would have received had he made inquiry. *Mateskey v. Feldman*, 75 Wis. 103, 43 N. W. 733; *Brinkman v. Jones, supra.* In *Frame v. Frame*, 32 W. Va. 463, 478, the court said:

" 'The earth has been described as that universal manuscript. open to the eyes of all. When therefore a man proposes

to buy or deal with realty, his first duty is to read this public manuscript, that is, to look and see who is there upon it, and what are his rights there. And, if the person in possession has an equitable title to it, he is as much bound to respect it, as if it was a perfect legal title evidenced by a deed duly recorded.' "

An apt statement of this general principle of possession being constructive notice is stated in *State v. Jewell* (1947), 250 Wis. 165, 171, 26 N. W. (2d) 825, 28 N. W. (2d) 314:

"The possession of real estate is generally considered constructive notice of rights of the possessor, whether the possession is sought to be used for the purpose of charging a purchaser with notice of an outstanding equity, or whether it is sought to charge a subsequent purchaser with notice of an unrecorded instrument and thereby defeat his right to protection under the recording acts. It is so held in the United States courts and in twenty-eight states of the Union. 55 Am. Jur., Vendor and Purchaser, p. 1087, sec. 712, and cases cited."

The rule with respect to possession of a tenant constituting notice of any rights claimed by such tenant is stated in 5 Tiffany, Real Property (3d ed.), p. 73, sec. 1291:

"It has been decided in a number of states that, by the possession of a tenant under a lease, a purchaser is chargeable with notice, not only of the tenant's rights under the lease, but also of any right which he may have not under the lease, as, for instance, under an agreement by the lessor to sell the property to him, . . ."

The authorities generally hold that in order that possession may constitute constructive notice such possession must be "open, visible, exclusive, and unambiguous." *Ely v. Wilcox* (1866), 20 Wis. *523; *Wickes v. Lake* (1869), 25 Wis. 71; and 55 Am. Jur., Vendor and Purchaser, p. 1090, sec. 716. It will thus be seen that the requirements as to the type of possession that will constitute constructive notice are practically identical with the requirements of the type of posses-

sion necessary to constitute adverse possession. In view of the fact that the farm buildings were unusable, the plowing of the two acres of land after November 4, 1950, and the hauling of the manure practically every day throughout November were acts which not only were "open and visible," but also "exclusive and unambiguous." They were the customary acts of possession which could be exercised as to unoccupied farmlands at such time of year. Surely they would have been sufficient to have constituted acts of adverse possession, and it would appear that the rule as to acts of possession necessary to constitute constructive notice to a purchaser is no more strict. *Wickes v. Lake, supra,* is authority for the principle that actual residence on the land is not required in order to have sufficient possession to constitute constructive notice.

In *George v. Stansbury* (1922), 90 W. Va. 593, 111 S. E. 598, both the plaintiff and defendants claimed title to a city lot. The plaintiff, during 1919, had maintained a garden on the lot, and the following year, although he did not have a garden there, he permitted the owner of a near-by lot who was excavating for a building to haul a large quantity of dirt from the excavation and dump it on the lot so as to fill a low place. It was during this second year that the defendants purchased the premises and obtained a deed which they recorded, while the plaintiff's title was not recorded. The West Virginia court held that the gardening during the one season, followed by the permitting of the dirt to be hauled in and dumped the second year, constituted sufficient possession to be constructive notice to the defendants of plaintiff's rights, and plaintiff was held to have the superior title. If hauling dirt onto a vacant lot constitutes sufficient possession to be constructive notice to a subsequent purchaser, surely hauling manure onto farmland, as in the instant case, should be held to be equally effective to constitute constructive notice.

In *Lyman v. Russell* (1867), 45 Ill. 281, plaintiff purchased some farmland but did not record his deed. The defendants claimed under a subsequent mortgage executed by plaintiff's vendor. The question was whether there was such "actual, open, notorious, and visible possession" of the lands by plaintiff as to constitute constructive notice to the subsequent mortgagees. Plaintiff's act of possession consisted of plowing some of the land in view of all who passed along the adjoining highway. The Illinois court held that the plaintiff's possession was sufficient notice to put a subsequent purchaser on inquiry, and should operate as notice of plaintiff's rights.

The learned trial court in the instant case apparently was of the opinion that, in order for the plaintiff Eugene M. Miller's possession of the premises to have been constructive notice to the defendants Hines that Miller claimed rights of ownership therein, there must have been some change in the type of his possession after November 4, 1950 (the date the Millers entered into the contract to purchase), and his possession prior thereto. This is very apparent from finding Five of the findings of fact made by the trial court, such finding reading as follows:

"That the plaintiff, Eugene M. Miller, continued in possession of said premises, and continued to pasture livestock thereon until about November 22, 1950, when it was necessary to remove them because of the weather, and continued to make such use of the tillable land on said premises as the weather permitted during the month of November, 1950. That the defendant, W. E. Hines, knew at that time of the oral lease between the plaintiff, Eugene M. Miller, and the defendant, Mary Green, for the 1950 season. That there was nothing in the use to which the land was put by the plaintiff, Eugene M. Miller, to indicate to the defendant, W. E. Hines, that there had been a change in the status of said plaintiff with relation to said land."

In other words the trial court found that there was possession of the premises by Miller from November 4, 1950, through to the end of that month, but there was no change in the type of possession. Apparently it was the theory of the trial court that the defendants Hines could assume, because of such lack of change in the character of possession, that the possession after November 4, 1950, was that of a tenant and not of a purchaser. The authorities, however, clearly establish that no such change in the character of possession is necessary.

8 Thompson, Real Property (perm. ed.), p. 413, sec. 4516, states:

"If the tenant changes his character by taking an agreement to purchase, or he has this right under his lease and exercises his option to purchase, his possession amounts to notice of his equitable title as purchaser."

To the same effect see *Anderson v. Brinser* (1889), 129 Pa. 376, 404, 18 Atl. 520, 521, wherein the Pennsylvania court stated:

"Knowledge of the existence of a lease will, of course, give constructive notice of all its provisions; but, the possession, apart from the lease, we think should be treated as notice of the possessor's claim of title, whatever that claim may be, for the lease may be but the first of two or more successive rights acquired by the tenant. Whilst in the occupancy under a lease for years, the tenant may have purchased under articles and entitled himself to an equity; or, indeed, he may have purchased the legal estate in fee and failed to record his deed. Would it be supposed that a knowledge of the precedent lease would dispense with the duty of inquiry, and entitle a subsequent grantee to the protection of an innocent purchaser?
. . .

"In Sugden on Vendors [volume 1, 6th Amer., from 10th London, ed., p. 265, sec. 22] it is expressly stated, and numerous authorities cited in support of the statement, that if a tenant during his tenancy change his character by having

agreed to purchase the estate, his possession amounts to notice of his equitable title as purchaser."

It is our considered judgment that the acts of possession on the part of the plaintiff Eugene M. Miller throughout the remainder of the month of November, 1950, following the purchase of the tract by the Millers on November 4, 1950, constituted constructive notice to all the world which required a subsequent purchaser to make inquiry as to what rights, if any, the plaintiff Eugene M. Miller claimed to have in the premises. Subsequent purchasers could not safely assume, without inquiry, as did the defendants Hines, that, because Miller had theretofore been a tenant for the season, there had been no subsequent change in his rights from that of a tenant to that of a purchaser.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment as prayed for in plaintiffs' complaint.

GEHL, J. (*dissenting*). The majority say in effect that as a matter of law any entry upon land and its occupation, no matter that the acts of entry may be infrequent and the occupation may be for short interrupted periods, constitutes such possession as to put a purchaser upon inquiry as to the rights of the person so occupying; that possession, regardless of its nature or extent, serves as notice to put the prospective buyer upon inquiry.

That is erroneous. Possession to constitute notice is that which is *required by law,* and is defined in *Ely v. Wilcox,* 20 Wis. *523, *531:

"The next question is, whether there was such possession by Ely at the date of the deed to the appellant as to be constructive notice to him of the plaintiff's title. The burden of proof was on the plaintiff to prove such possession. He has failed to prove that either he or any one under him was in actual possession of the premises or any part of them at

the date of the deed. The rule is, that possession, to be notice, must be open, visible, exclusive, and unambiguous; not liable to be misunderstood or misconstrued. *Patten v. Moore,* 32 N. H. 384, and authorities there cited. The plaintiff had no such possession."

In *Wickes v. Lake,* 25 Wis. 71, the court restated the rule in the same language. Both cases have been considered and cited by this court numerous times.

Not all of the later cases have dealt with the precise question here involved; they are referred to only as indicating that it is quite likely that the court has not overlooked the rule there stated. It has never, so far as I have been able to find, been held by this court that possession to be constructive notice, may be of a nature different from that there defined. The majority cite a number of cases dealing with situations similar to that presented in the instant case. The court in those cases described the possession upon which the party relied in opposition to the contention of one claiming as *bona fide* purchaser in terms different from those used by the court in the two earlier cases. But a reading of those cases will disclose that the possession there found was such as to meet the requirements of the earlier definition.

The rule as it is stated in the *Ely Case, supra,* and the *Wickes Case, supra,* is in substance identical with that stated in 55 Am. Jur., Vendor and Purchaser, p. 1090, sec. 716:

"In order that possession of real estate may constitute notice to a purchaser of the rights of the party in possession or by virtue of which the possession is held, such possession must be visible, open, clear, full, notorious, unequivocal, unambiguous, inconsistent with or adverse to the title or interest of the vendor, and not likely to be misunderstood or misconstrued, but, to the contrary, sufficient to put the purchaser on his guard."

The issue presented is one of fact, *Brinkman v. Jones,* 44 Wis. 498; *Mohr v. Porter,* 51 Wis. 487, 8 N. W. 364;

55 Am. Jur., Vendor and Purchaser, p. 1135, sec. 786, and the court's finding should not be disturbed. That a finding has force is indicated quite clearly in *First Nat. Bank v. Savings L. & T. Co.* 207 Wis. 272, 240 N. W. 381, a case involving similar issues where the court in discussing a finding that one claiming to be a *bona fide* purchaser did not have sufficient notice to put him upon inquiry said (p. 279) :

"It is not at all clear that this court could have disturbed a contrary finding, . . ."

It was the burden of the plaintiffs to establish that Hines was not a *bona fide* purchaser. *Olmsted v. McCrory,* 158 Wis. 323, 148 N. W. 871. The court found that they had not met the burden. The fact that some of the land had been plowed, that a water tank and a pile of manure were left upon the farm (neither of which circumstances is evidence of possession inconsistent with the right of possession of Mrs. Green, and neither of which is a circumstance which would necessarily suggest that Miller rather than Mrs. Green or someone else acting for or under her had left the tank and manure upon the premises and had plowed the land), considered with the fact that the buildings were unoccupied and that the crop season for which period Miller had rented the farm had ended, are not such as to permit us to hold that the court's findings are contrary to the great weight and clear preponderance of the evidence. Certainly we should not say that under those circumstances the court erred in its finding that plaintiffs had failed to meet the burden to establish that their possession of the farm was "open, visible, exclusive, and unambiguous; not liable to be misunderstood or misconstrued."

The trial judge made no specific finding that the possession of Miller was not that required by law to put Hines on inquiry. He did find that "there was nothing in the use to which the land was put by the plaintiff, Eugene M. Miller,

to indicate to the defendant, W. E. Hines, that [there] had been a change in the status of said plaintiff with relation to said land," which I construe as a finding that Miller's occupancy of the land was not such as is required by law to put Hines on inquiry. In any event, the omission, if there were such, to make the specific finding, one which is necessary to support the judgment, is equivalent to a finding against the contention of the plaintiffs. *Robinson v. Marachowsky,* 184 Wis. 600, 200 N. W. 398; *Desmond v. Pierce,* 185 Wis. 479, 201 N. W. 742.

I am authorized to state that Mr. Justice BROADFOOT and Mr. Justice BROWN join in this dissent.